IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MUMTAZ BEGUM**, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:22-cv-00478-JMC |
| **UNITED STATES DEPARTMENT OF STATE, et al**, | | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Mumtaz Begum filed this action asking the Court to issue a writ of mandamus compelling Defendants to adjudicate an immigrant visa application[1] on behalf of Plaintiff's son, daughter-in-law, grandson, and granddaughter. (ECF No. 15). The Amended Complaint names four defendants: (1) the United States Department of State, (2) the U.S. Embassy in Islamabad, Pakistan ("the Embassy"), (3) United States Secretary of State Anthony Blinken, and (4) Angela Aggeler in her role as Chargé D' Affaires of the United States at the U.S. Embassy in Islamabad, Pakistan. (ECF No. 15). Presently before the Court is the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 11). In determining this Motion, the Court further considered Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 18) and Defendants' Reply in Further Support of Defendants' Motion (ECF No. 19). No hearing on this Motion is

---

[1] In their Reply to Plaintiff's Opposition, Defendants bring to the Court's attention that Plaintiff has not officially made a "visa application . . . because § 222(e) of the INA requires that immigrant visa applicants be interviewed." (ECF No. 19, p. 3). As discussed more thoroughly in the Court's analysis, several cases from the United States District Court for the District of Columbia have facts strikingly similar to the facts in Plaintiff's case. The court in those cases utilizes the phrase "visa application" throughout its opinions, and this Court shall do the same for the sake of clarity. *See e.g.*, *Ahmed v. U.S. Dep't of Homeland Sec.*, No. 21-cv-893 (APM), 2022 WL 424967 (D.D.C. Feb. 11, 2022) (utilizing the phrase "visa application" throughout the opinion although "the State Department [had] still not scheduled . . ." an interview).

necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, Defendants' Motion, treated as a motion to dismiss, is GRANTED.

I.     BACKGROUND

    A. **I-130 Petition for Alien Relative Overview**

"The Immigration and Nationality Act ("INA") authorizes the issuance of immigrant visas to certain relatives of U.S. citizens." *Nusrat v. Blinken*, No. 21-2801 (TJK), 2022 WL 4103860, at *1 (D.D.C Sep. 8, 2022) (citing 8 U.S.C. § 1101 *et seq.*) (other citation omitted). "To obtain permanent resident status for qualifying foreign relatives under the INA, a U.S. citizen must submit Form I-130 ('Petition for Alien Relative') to U.S. Customs and Immigration Services ('USCIS')." *Nusrat*, 2022 WL 4103860, at *1 (citing 8 U.S.C. § 1154; 8 C.F.R. § 204(1)(a)(1)) (other citation omitted). "If USCIS approves the petition, it is forwarded to the State Department's National Visa Center [('NVC')], and the foreign national is notified to go to the local U.S. consulate in [his or her] country to complete visa processing, which includes . . . appearing for an interview with a consular officer." *Nusrat*, 2022 WL 4103680, at *1 (citing *Ghadami v. U.S. Dep't of Homeland Sec.*, NO 19-cv-397 (ABJ), 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020); 22 C.F.R. §§ 204(a)(3), 42.67(a)(3)) (internal quotations omitted). "The consular officer must then either issue or refuse the visa." *Ghadami*, 2020 WL 1308376, at *1.

    B. **Statement of Facts**

The following facts are uncontroverted or set forth in the light most favorable to Plaintiff. Plaintiff, an eighty-year-old woman suffering from mobility problems, is a citizen of the United States and is the visa petitioner for her son, Ahsan Ikram ("beneficiary"). (ECF No. 15, pp. 1–2, 7). Ahsan Ikram is a citizen of Pakistan and currently resides therein. *Id.* at p. 1. Ahsan Ikram's

wife (Tehmina Ahsan) and children (Fatima Ikram and Muhammad Ikram), all of whom are citizens of Pakistan, are derivative applicants of Ahsan Ikram's visa application. *Id.* at p. 2.

On or about July 30, 2007, Plaintiff filed a visa petition for Ahsan Ikram with the USCIS. *Id.* at p. 4. Plaintiff has paid, and Defendants have accepted, all applicable filing and visa fees. *Id.* USCIS purportedly approved Plaintiff's I-130 alien relative visa petition in the fall of 2007. *Id.* However, because the beneficiary is not an immediate relative, the petition remained stalled until the visa number became current. *Id.* The beneficiary's visa number became current prior to June of 2019, and on or about June 18, 2019, the NVC restarted processing the beneficiary's visa case and assigned to it Case Number ISL2007824010. *Id.* The case became documentarily qualified on or about January 10, 2020. *Id.* Following the completion of NVC's processing in this case, NVC sent the case to the U.S. Embassy in Islamabad, Pakistan for an interview. *Id.* Since the case has been sent to the Embassy, the State Department has not conducted an interview nor issued a decision in this case. *Id.* Prior to filing this action, Plaintiff had made several attempts at contacting the Embassy to obtain a decision. *Id.*

Plaintiff alleges that: (1) Defendants have violated the Administrative Procedure Act by intentionally delaying a response to Ahsan Ikram's visa application pursuant to the Controlled Application Review and Resolution Program ("CARRP"), and (2) the combination of Defendants' delay and failure to act has violated the procedural Due Process guaranteed to Plaintiff by the Constitution of the United States. (ECF No. 15). Defendants contend that: (1) the delay in adjudicating the visa application is not unreasonable, (2) Plaintiff lacks standing to pursue a claim based on CARRP or, alternatively, has failed to sufficiently plead that claim, and (3) Plaintiff has failed to plead a viable due process claim. (ECF Nos. 11 & 19).

## II. STANDARD OF REVIEW

### A. Subject-Matter Jurisdiction Under Rule 12(b)(1)

"Rule 12(b)(1) governs motions to dismiss . . . for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333–34 (D. Md. 2019) (citing *CGM, LLC v. BellSouth Telecomm's, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011)) (other citation omitted). "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'challenges a court's authority to hear the matter brought by a complaint.'" *Stone*, 400 F. Supp. 3d at 334 (quoting *Akers v. Md. State Educ. Ass'n*, 376 F. Supp. 3d 563, 569 (D. Md. 2019)). "Under Rule 12(b)(1), 'the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction.'" *Stone*, 400 F. Supp. 3d at 334 (citations omitted).

When challenging a complaint under Rule 12(b)(1), Defendants may "advance a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Hasley v. Ward Mfg., LLC*, No. RDB-13-1607, 2014 WL 3368050, at *1 (D. Md. July 8, 2014)) (internal quotations and other citations omitted). When defendants bring a facial challenge, a plaintiff is "afford[ed] . . . 'the same procedural protection' they would receive on a Rule 12(b)(6) motion to dismiss." *Stone*, 400 F. Supp. 3d at 334 (quoting *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017)) (other citation omitted). "As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Stone*, 400 F. Supp. 3d at 334 (other citation omitted).

In a factual challenge, "the plaintiff[] bear[s] the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence." *Id.* (other citation omitted). "In determining whether the plaintiffs have met this burden, the Court is to regard the pleadings'

allegations as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (other citations and internal quotations omitted).

### B. Failure to State a Claim Under Rule 12(b)(6)

"The purpose of a Rule 12(b)(6) motion is to test[] the sufficiency of a complaint, not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 351 (other citations and internal quotations omitted). "A complaint fails to state a claim if it does not contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed R. Civ. P. 8(a)(2), or does not 'state a claim to relief that is plausible on its face . . . .'" *Id.* (citing *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Stone*, 400 F. Supp. 3d at 351–52 (other citations and internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 352 (other citations and internal quotations omitted). "In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994)) (other citations omitted). However, "the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, . . . or legal conclusions couched as factual allegations." *Id.* (other citations omitted).

When determining the sufficiency of a complaint under a Rule 12(b)(6) motion to dismiss, "a court ordinarily may not consider any documents that are outside of the complaint, or not

expressly incorporated therein." *McPherson v. Balt. Police Dep't.*, 494 F. Supp. 3d 269, 278 (D. Md. 2020) (other citations and internal quotations omitted). However, a "court may . . . consider matters of which a court may take judicial notice." *Id.* at 278–79 (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)) (other citations and internal quotations omitted).

### III. ANALYSIS

#### A. Plaintiff Lacks Standing to Pursue Her CARRP-Based Claim.

Plaintiff lacks standing to pursue a claim based on CARRP, and the Court therefore lacks jurisdiction over Plaintiff's CARRP-related claim.[2] "A federal court lacks jurisdiction if the plaintiff does not establish standing." *Logan v. Blinken*, No. 21-2275 (FYP), 2022 WL 3715798, at *2 (D.D.C. Aug. 29, 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing the [three] elements of standing.")). "Standing's irreducible constitutional minimum comprises three prongs." *Stone*, 400 F. Supp. 3d at 338 (other citations and internal quotations omitted). To establish standing, "The Plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (other citations omitted). "To satisfy the injury-in-fact prong, a plaintiff must establish that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (other citations and internal quotation omitted). "To be particularized, an injury must affect the plaintiff in a personal and individual

---

[2] The Court notes that Defendants' main argument for dismissing Plaintiff's CARRP-based claim is that Plaintiff's mere speculation that CARRP was applied in this case "fails to satisfy the applicable pleading standard." (ECF No. 11-1, p. 14). Defendants' alternative argument for dismissing this claim is that the policy does not extend to the Department of State, thereby rendering Plaintiff without standing to bring such a claim. (ECF No. 11-1, p. 15). Regardless of Defendants' focus on the issue of standing, this Court recognizes that it must "assure [itself] of subject matter jurisdiction and may address standing sua sponte . . . ." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020); *see also Nusrat*, 2022 WL 4103860, at *3 n.1 (although [d]efendant did not address the plaintiff's CARRP claim in its motion, nor did the plaintiff in her opposition, the court considered the issue of standing under its "independent obligation to raise the issue because standing is necessary for the [c]ourt's subject-matter-jurisdiction . . . .").

way[,] . . . [and] [t]o be concrete, an injury must actually exist and be real, and not abstract." *Id.* (other citations and internal quotations omitted).

Plaintiff's Amended Complaint alleges that "[o]n information and belief, . . . Defendants are intentionally delaying a response to the DOS in regard to Ahsan Ikram's visa application pursuant to the CARRP program." (ECF No. 15, p. 5). As indicated by Plaintiff, CARRP is a policy created and implemented by the Department of Homeland Security ("DHS"), but Plaintiff claims that Defendants regularly work with DHS. *Id.* Plaintiff further alleges that "[s]ince 2008, the Defendants have used CARRP . . . to investigate and adjudicate applications deemed to present potential 'national security concerns.'" *Id.* at p. 6. It is Plaintiff's contention that CARRP violates: (1) the Immigration and Nationality Act, (2) Article 1, Section 8, Clause 4 of the Constitution of the United States, (3) the Fifth Amendment to the Constitution of the United States, and (4) the APA. (ECF No. 15, p. 8). In her Opposition to Defendants' Motion, Plaintiff provides an in-depth analysis regarding the proper classification of CARRP as a substantive rule thereby subject to the APA's notice-and-comment rulemaking procedures. (ECF No 18, pp. 11–13). However, Plaintiff's argument that she has sufficiently pled her CARRP-based claim is completely at odds with the sizable amount of caselaw directly addressing this issue.

Just this year, the United States District Court for the District of Columbia has decided cases with strikingly similar facts to Plaintiff's, and that court has directly addressed—several times—the issue of similarly situated plaintiffs' standing to bring a CARRP-related claim. In *Alshawy*, the plaintiff claimed on "information and belief" that "[d]efendants are intentionally delaying a response . . . to . . . [beneficiary's] visa application pursuant to the CARRP program . . . ." *Alshawy*, No. 21-2206 (FYP), 2022 WL 970883, at *4. The *Alshawy* court found that "[s]uch vague and conclusory allegations, devoid of any facts, do not support an inference that CARRP

was applied in processing [p]laintiff's visa application." *Id.* "With nothing more than [p]laintiff's speculation that CARRP contributed to the delay that she is experiencing, . . . [plaintiff] lacks standing to challenge CARRP because she cannot demonstrate that she has suffered an injury-in-fact as a result of the policy." *Id.* (other citations and internal quotations omitted).

The plaintiff is *Nusrat*, like Plaintiff here, alleged that "her parents are from a 'predominantly Muslim Country' and that 'upon information and belief' CARRP caused the claimed delay." *Nusrat*, 2022 WL 4103860, at *3. However, the *Nusrat* court found that plaintiff's "allegations do not 'demonstrate that she has suffered an injury-in-fact as a result of the policy.'" *Id.* (quoting *Alshawy*, 2022 WL 970883) (other citation omitted). The court held that plaintiff's "allegations about CARRP are not enough to support a 'plausible inference' that the policy affected her parents' applications, and so she lacks standing." *Id.* (other citation omitted).

In reaching the conclusion that a plaintiff did not have standing to bring their CARRP-related claim, the court in *Ahmed* focused on the inapplicability of CARRP to a Form I-130. *Ahmed v. Dep't of Homeland Sec.*, No. 21-cv-893 (APM), 2022 WL 424967 (D.D.C. Feb. 11, 2022). The court took judicial notice of the fact that CARRP is a USCIS/DHS policy.[3] *Id.* at *3. The plaintiff in *Ahmed*, like Plaintiff here, alleged as much.[4] *Id.* ("DHS has a policy, known as [CARRP] . . . .);

---

[3] *Policy for Vetting and Adjudicating Cases with National Security Concerns*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/sites/default/files/document/foia/CARRP_Guidance.pdf (Apr. 11, 2008). This Court will also take judicial notice that CARRP is a policy of USCIS/DHS. *Ahmed*, 2022 WL 424967, at *3 n.2 ("The court may take judicial notice of information on official government websites without transforming the motion into one for summary judgment.") (other citations omitted).

[4] In accordance with the United States District Court for the District of Columbia, which has judicially noticed information on official government websites several times for the purpose of deciding the issue of standing for a CARRP-related claim, this Court shall also take judicial notice that CARRP is a DHS/USCIS policy inapplicable to I-130 petitions. *See e.g.*, *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-1262 (RC), 2021 WL 5998385, at *5–6, *5 n.6 (D.D.C. Dec. 20, 2021) (citing Fraud Detection & National Security Controlled Application Review and Resolution Program (CARRP) Independent Study, U.S. Citizenship and Immigration Services, https://www.aclusocal.org/sites/default/files/wp-content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf (Dec. 28, 2011) at 28); *Abbas v. U.S. Dep't of Homeland Sec.*, 20-cv-03192 (CJN), 2021 WL 3856625, at *2 n.3 (D.D.C. Aug. 29, 2021) (noting that CARRP is not used in the Form I-130 context).

(ECF No. 15, p. 5) ("The DHS has a policy . . . known as . . . CARRP . . . ."). Citing to publicly available USCIS documents, the court in *Ahmed* recognized that CARRP does not apply to a Form I-130. *Ahmed*, 2022 WL 424967, at *3 (citing Fraud Detection & National Security: Controlled Application Review and Resolution Program (CARRP) Independent Study, U.S. Citizenship and Immigration Services, https://www.aclusocal.org/sites/default/files/wp-content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf (Dec. 28, 2011)). The plaintiff in *Ahmed* did not contest the defendants' assertion that CARRP did not apply to a Form I-130, but plaintiff did argue that the policy was unlawful. *Ahmed*, 2022 WL 424967, at *3. Here, Plaintiff argues that CARRP is an unlawful DHS policy. (ECF No. 15 & 18). She further argues that Defendant DOS regularly works with DHS when carrying out background security investigations. (ECF No. 15). Even taking this assertion as true, the mere fact that DOS regularly works with DHS regarding visa applications does not overcome the fact that DHS's CARRP policy is inapplicable to a Form I-130. Like the court in *Ahmed*, this Court finds that plaintiff has not shown the applicability of CARRP to the visa application at issue. *See Ahmed*, 2022 WL 424967, at *3.

The United States District Court for the District of Columbia has "consistently held that if CARRP does not apply to plaintiffs, and they have not been affected by it, then they have no standing to pursue a claim based on it." *Nusrat*, 2022 WL 4103860, at *3 (quoting *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)); *see also Ahmed*, 2022 WL 424967, at *3 (quoting *Ghadami*, 2020 WL 1308376, at *6 ("If CARRP does not apply to plaintiffs, and they have not been affected by it, then they have no standing to pursue a claim based on it . . . .")). With respect to the Plaintiff's challenge to CARRP, the Court will grant Defendants' Motion.

### B. The Alleged Delay in Rendering a Decision on Plaintiff's Application is Not Unreasonable, so Plaintiff's APA Claim is Dismissed for Failure to State a Claim under Rule 12(b)(6).

Plaintiff has failed to sufficiently plead a claim regarding the unreasonableness of the delay in the visa application. Plaintiff alleges that Defendants have unreasonably delayed adjudicating her son's visa application and seeks relief for that delay under the APA. (*See* ECF No. 15, pp. 5–7). The APA commands that agencies, "within a reasonable time, . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). An APA claim pursuant to 5 U.S.C. § 706(1) exists when a "plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 55 (2004). If an agency fails to comply with this requirement, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed . . . ." 5 U.S.C. § 706(1). This Court recognizes that "[t]he standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361" *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (other citations omitted).

Regarding the length of the delay required to establish unreasonableness under the APA, "[t]here is no per se rule as to how long is too long to wait for agency action." *Ahmed*, 2022 WL 424967, at *4 (other citations omitted). Instead, courts apply the six factors set forth in *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984)[5]:

(1) The time agencies take to make decisions must be governed by a rule of reason;

---

[5] This Court has found guidance in the D.C. Circuit's rulings in *TRAC* cases, and this trend will continue in this Opinion. *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 638 F. Supp. 3d 508, 512 (D. Md. 2009) ("The D.C. Circuit deals with a vast amount of administrative cases, and its holding on such matters are highly instructive in the absence of Fourth Circuit precedent."), *rev'd*, 637 F.3d 259 (4th Cir. 2011) (distinguishing case from D.C. Circuit cases involving final agency action).

(2) Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Ahmed*, 2022 WL 424967, at *4 (other citation and internal quotations omitted). The reasonableness of a delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful . . . ." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Rather, it will "depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Id.*

Before addressing the *TRAC Factors*, the Court wishes to dispel Plaintiff's contention that application of those factors is premature at this stage. (ECF No. 18, p. 7). A similar concern was addressed by the court in *Ahmed*. Like Defendants here, the defendants in *Ahmed* supported their motion with a declaration by a DOS official explaining the alleged reasons for the delay.[6] Although other courts have considered such evidence in connection with motions to dismiss, the court in *Ahmed* declined to do so in light of "the D.C. Circuit's instruction that the unreasonable-delay

---

[6] "In support of its motion to dismiss, the Government has submitted a declaration by a State Department official, which provides information about the State Department's 2020 suspension of many visa services due to COVID and the subsequent backlog of visa applications." *Ahmed*, 2022 WL 424967, at *4. Here, Defendants' sole exhibit attached to their motion is a sworn declaration of a DOS employee stating that there is currently no availability for Plaintiff's visa application interview. (*See* ECF No. 11-2, p. 3).

analysis under *TRAC* is a fact-intensive inquiry." *Ahmed*, 2022 WL 424967, at *4 (other citations omitted). Although the court refused to take judicial notice of the defendants' ostensible explanation for the delay, the court proceeded to apply the *TRAC* factors.[7] *Id.* Refusing to consider such evidence and declining to convert the motion into one for summary judgment is "not to say that a plaintiff automatically survives a motion to dismiss by merely alleging that a processing delay is unreasonable." *Id.* at *5. "A plaintiff in such a case is still subject to the standard for pleadings under *Twombly* and *Iqbal*." *Id.* Therefore, the Court must determine "whether [Plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Id.* (other citation omitted).

As described in the Court's consideration of the *TRAC* factors immediately below, Plaintiff has not made out an unreasonable delay claim under the APA.

   1. ***TRAC* Factors One and Two Weigh Against a Finding of Unreasonable Delay.**

The first two *TRAC* factors—which focus on the reasonableness of the delay and whether Congress has set a timeline for the completion of the action in question—favor Defendants. "The first factor is the most important *TRAC* factor . . . and is typically considered together with the second." *Arab v. Blinken*, No. 21-1852 (BAH), 2022 WL 1184551, at *7 (D.D.C. Apr. 21, 2022) (other citations and internal quotations omitted). "There is no statutory or regulatory timeline that provides a 'rule of reason' to govern the State Department's adjudication of a visa application." *Ahmed*, 2022 WL 424967, at *5. Rather than set any statutory guideline for the processing of visas, "Congress has given the agencies wide discretion in the area of immigration processing." *Alshawy*,

---

[7] The court in *Ahmed* recognized that "[o]ther courts . . . have considered such supplemental evidence of the ostensible reason for any processing delay—Covid-related State Department service suspensions and backlogs—in connection with motions to dismiss." *Id.* Like the court in *Ahmed*, this Court will err on the side of caution and refuse to take judicial notice of Defendants' ostensible explanation for the delay and will further refuse to convert this motion into one for summary judgment. *Id.*

2022 WL 970883, at *5 (other citations and internal quotations omitted). "Congress granted the State Department the authority to process visa applications in broad terms, specifically omitting 'substantive standards against which the Secretary's determination could be measured.'" *Id.* (quoting *Legal Assistance for Vietnamese Asylum Seekers v. U.S. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). Although there is no bright-line rule for courts to follow, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (citation omitted) (collecting cases). Many courts have "declined to find a two-year period to be unreasonable as a matter of law[,]" especially when the agency provides a reasonable explanation for the delay and "regularly revisit[s] the question" of whether visa processing can proceed. *Ghadami*, 2020 WL 1308376, at *8 (collecting cases); *Skalka*, 246 F. Supp. 3d at 154 (collecting cases).

The relevant period of delay is "calculated from the earliest possible time that the Embassy could have scheduled the interview." *Alshawy*, 2022 WL 970883, at *6. While the parties do not clearly identify the relevant period of delay or the earliest date on which an interview could have been scheduled, "[s]imilar cases seem to focus on the delay from the last Government action to the issuance of the opinion."[8] *Mahmood*, 2021 WL 5998385, at *6 (other citation and internal

---

[8] Plaintiff originally filed her I-130 petition on or about July 30, 2007. However, "[b]ecause the beneficiary is not an immediate relative, the petition remained stalled until the visa number became current." (ECF No. 15, p. 4). Around June of 2019, Plaintiff's visa number became current and NVC processing became authorized. (ECF Nos. 15 & 18). Defendants confirm that Plaintiff's visa number became current in June 2019. (ECF No. 19, p. 2). This Court can find no support to conclude that the relevant measuring date would be on the date of the initial filing of Plaintiff's I-130 petition. Plaintiff seemingly concedes this point by not arguing for the Court to begin the delay measurement at the time of the initial filing. In fact, Plaintiff only briefly addresses the duration of her entire application process in her Opposition. (ECF No. 18, p. 3) ("Defendants have been sitting on this case for almost a year, . . . Plaintiff has been

quotations omitted). The parties agree that Plaintiff's visa number became current in June 2019, the NVC started processing Plaintiff's visa application in June 2019, and the NVC sent the visa application to the Embassy on or about January 10, 2020. The last government action in this case is purportedly the transfer of Plaintiff's visa application to the Embassy for the purpose of scheduling an interview. Only slightly more than two years (25 months) passed from the transfer of the application to the Embassy (January 10, 2020) to the filing of the case *sub judice* (February 28, 2022). Even measuring until the date that this opinion is issued, only thirty-three months have passed since the visa number became current. *See Nusrat*, 2022 WL 4103860, at *6 (finding that a delay of thirty-two months was not enough to tilt the first two *TRAC* factors in Plaintiff's favor); *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3–4 (D.D.C. Apr. 29, 2022) (delay of thirty-three months not unreasonable).

Assuming, *arguendo*, that the date at which the Court should begin to measure the delay is June 2019 (the date the NVC began processing the visa application), the delay still cannot be considered unreasonable. From June 2019 until the issuance of this opinion, only forty months have passed. *See e.g.*, *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 162 (D.D.C. 2021) (noting that delays of three to five years are often not unreasonable); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient to warrant emergency relief . . . ."); *Pourshakouri v. Pompeo*, No. 20-cv-00402 (RJL), 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding a delay of forty-four months to be reasonable); *Skalka*, 246 F. Supp. 3d 154 (collecting cases concluding that delays of four and a half, five, and ten years were not unreasonable in different immigration contexts).

---

separated from her son for over fifteen years since the initial filing, [and the] . . . delay . . . cannot possibly be blamed on a global pandemic that began nearly [thirteen] years after [Plaintiff's] initial filing.").

Like the plaintiff in *Ahmed*, Plaintiff here has offered "no other facts that would allow this [C]ourt to measure the reasonableness of the Government's delay." *Ahmed*, 2022 WL 424967, at *5. Plaintiff points to nothing specific about the relevant visa application to distinguish it from the multitude of similar cases. *See e.g.*, *Shen v. Pompeo*, No. 20-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (discussing plaintiff's allegation that her visa application is particularly time sensitive); *Dastagir*, 557 F. Supp. 3d 160 (discussing but ultimately dismissing plaintiff's argument that, based on statistics as to the average time of adjudicating a visa application, her visa should take less time to adjudicate). Nor has Plaintiff offered any evidence indicating that Defendants have treated her son differently from other applicants, such as pointing to similarly situated applicants whose applications were adjudicated in a shorter amount of time. *Mashpee*, 336 F.3d at 1100 (suggesting that courts should not grant relief where there is "no evidence the agency . . . treated the petitioner differently from anyone else."). "Absent such factual allegations, the [C]ourt cannot find that the first two *TRAC* factors weigh in Plaintiff's favor." *Ahmed*, 2022 WL 424967, at *5. The first two *TRAC* factors weigh in favor of Defendants.

### 2. **TRAC Factor Four Weighs Against a Finding of Unreasonable Delay.**

The fourth *TRAC* factor, "which considers how a court order in Plaintiff's favor would shift existing agency priorities," also weighs in favor of Defendants. *Ahmed*, 2022 WL 424967, at *6. "This factor carries the greatest weight in many cases . . . ."[9] *Id.* (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)). This factor "requires an assessment of the impact that expediting the delayed action would have on other agency priorities . . . ." *Logan*, 2022 WL 3715798, at *6. Court intervention is often unwarranted when "a judicial order putting the

---

[9] Although some cases have indicated that *TRAC* factor one carries the greatest weight, the Court finds that both factors weigh in favor of Defendants, thereby making the issue irrelevant.

petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Id.* (quoting *Mashpee*, 336 F.3d at 1100) (internal quotations omitted).

Here, judicial intervention would create just the kind of reordering of the queue that should be avoided. Plaintiff seeks to compel the issuance of a visa and jump past all others who are undergoing the application procedure. *See e.g.*, *Logan*, 2022 WL 3715798, at *6 (finding that factor four weighed in favor of defendants when plaintiff sought to advance in the queue pursuant to judicial intervention); *Alshawy*, 2022 WL 970883, at *7 (finding that *TRAC* factor four weighed in favor of defendants because granting plaintiff's request "would simply reorder a queue of applicants seeking adjudication . . . .") (other citations and internal quotations omitted). Plaintiff has not disputed that granting her requested relief would have precisely the effect of reordering the current queue. "These sorts of judicial reorderings of agency priorities are inappropriate where the agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Ahmed*, 2022 WL 424967, at *6. *TRAC* factor four weighs in favor of Defendants.

### 3. *TRAC* Factors Three and Five Weigh in Favor of Plaintiff.

The third and fifth *TRAC* factors consider whether "human health and welfare are at stake . . . and the nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. This Court acknowledges the profound impact and "irrevocabl[e] harm" that Plaintiff has felt because of her separation from her son and his family. (ECF No. 15, p. 7). Plaintiff has "repeatedly request[ed] the processing of [her] case," and there can be no doubt, as Defendants concede, that the processing delay has profoundly impacted the lives of Plaintiff and Plaintiff's family. (*See generally* ECF No. 15); (ECF No. 11, p. 12). Like the court in *Nusrat*, this Court "takes seriously the harm that separation imposes on a family." *See e.g.*, *Nusrat*, 2022 WL 4103860, at *7 (citing

*Liu v. Blinken*, 544 F. Supp. 3d 1, 12–13 (D.D.C. 2021) (third *TRAC* factor favored plaintiffs due to harm from family separation)); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (finding the third and fifth *TRAC* factors to weigh in plaintiff's favor in light of the separation of friends, family, and loved ones). *TRAC* factors three and five weigh in Plaintiff's favor.

### 4. TRAC Factor Six is Neutral.

The sixth *TRAC* factor, which concerns agency motivation, is neutral in this case. "This factor simply reminds courts that they need not find any impropriety . . . to hold that agency action is unreasonably delayed." *Nusrat*, 2022 WL 4103860, at *7 (other citations and internal quotations omitted). "[T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (other citation omitted). Plaintiff has not plausibly alleged that "the agency has acted in bad faith in delaying action." *Id.* (other citation omitted). Although Plaintiff alleged, and this Court rejects, that CARRP is unlawful and caused the delay, "the alleged illegality of an agency policy is not the sort [of] impropriety this factor contemplates." *Id.* (citing *Liu*, 544 F. Supp. 3d at 15 (A "good faith legal disagreement" about the application of a State Department practice is "hardly an impropriety that the [c]ourt would weigh in plaintiff's favor under this factor.")). Therefore, the Court finds the sixth *TRAC* factor to be neutral.

### 5. The Balance of TRAC Factors Weighs Against Plaintiff.

Considering all the *TRAC* factors together, Plaintiff has not stated an unreasonable-delay claim under the APA. The hardship faced by Plaintiff, her son, and his family is "outweighed by the rule of reason supplied by the case law and the fact that granting relief would be at the expense of others without any net gain." *Ahmed*, 2022 WL 424967, at * 6.

The Court's conclusion regarding the weighing of the *TRAC* factors also disposes of Plaintiff's request for a writ of mandamus. Although Plaintiff has not brought a separate mandamus claim, she asks the court to issue a writ of mandamus compelling Defendants to (1) complete all administrative processing within sixty days, (2) issue immigrant visas to Ahsan Ikram and his family, and (3) explain to Plaintiff the cause and nature of the delay. (ECF No 15, p. 9). As previously stated in this Opinion, "[t]he standard for undue delay under the Mandamus Act . . . is identical to the APA standard." *Logan*, 2022 WL 3715798, at *4 (other citations omitted). Courts are to "reject[] mandamus claims that would have . . . the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants." *Ahmed*, 2022 WL 424967, at *6 (other citation omitted). Therefore, the Court will also deny Plaintiff's request for mandamus.

### C. Plaintiff Does Not Assert a Liberty Interest Protected by the Constitution, so Her Due Process Claim is Dismissed for Failing to State a Claim Under Rule 12(b)(6).

Plaintiff asserts that her right to "fundamental fairness in administrative adjudication" was violated by Defendants' failure "to provide a reasonable and just framework of adjudication in accordance with applicable law." (ECF No. 15, p. 7). "To state a violation of due process, a plaintiff must allege a deprivation of her life, liberty, or property by the government." *Alshawy*, 2022 WL 970883, at *8 (citing *Kerry v. Din*, 576 U.S. 86, 90 (2015)) (other citation omitted). "If the Court determines that the plaintiff was not denied an interest in her life, liberty, or property, then her claim must be dismissed." *Alshawy*, 2022 WL 970883, at *8 (other citation omitted). Therefore, the first step this Court must take in considering a due process claim is to "consider whether the stated liberty interest is one that warrants constitutional protection." *Id.* (other citation omitted).

As Defendants recognize in their Motion, it is unclear based on Plaintiff's Amended Complaint whether Plaintiff is bringing a procedural or substantive due process claim. (ECF No. 11-1, pp. 16–17); *see Schwartz v. U.S. Dep't of Homeland Sec.*, No. 21-cv-378, 2021 WL 4133618, at *4 (D.D.C. Sept. 10, 2021) ("As Defendants note, it is not clear precisely what version of a due-process claim Plaintiff seeks to bring [i.e., substantive or procedural], but a necessary component is a protected liberty or property interest of which plaintiff has been deprived."). In her Opposition, Plaintiff clarifies that she believes Defendants have denied her the right to procedural due process.[10] (ECF No. 18, p. 14) (Plaintiff alleges that Defendants' actions have "resulted in an ongoing denial of her Fifth Amendment right to procedural due process.").

There is no doubt Plaintiff enjoys "a liberty interest in her personal choice in matters of marriage and family life . . . ." *Alshawy*, 2022 WL 970883, at *8 (other citations and internal quotations omitted). However, this interest is not implicated by the facts Plaintiff has alleged in her Amended Complaint. *See e.g.*, *Keyhanpoor v. Blinken*, No. 21-1182 (TJK), 2022 WL 4534629, at *8 (finding no due process protection of a citizen seeking to bring his non-citizen son into the United States); *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) ("[A] parent does not have a constitutionally-protected interest in the companionship of a child who is past minority and independent."); *cf. Zandieh v. Pompeo*, No. 20-919 (JEB), 2020 WL 4346915, at *4 (D.D.C. July 29, 2020) (dismissing a citizen child's constitutional claim when her noncitizen parents were denied entry into United States). Plaintiff has not asserted a "liberty interest protected

---

[10] In *Alshawy*, the plaintiff did not specify in her complaint whether she was pursuing a substantive or procedural due process claim. *Alshawy*, 2022 WL 970883, at *7 n.6. The Defendants in that case addressed both procedural and substantive due process in their motion, and the plaintiff only addressed procedural due process in her opposition. *Id.* Because the plaintiff failed to address substantive due process, the *Alshawy* court treated any such claim as conceded. *Id.* (citing *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 24 (D.D.C. 2014) (treating claims the "[p]laintiff never addressed" as conceded)). Faced with an identical situation here, this Court will also treat any claim to substantive due process as conceded.

by the Constitution," and her procedural due process claim must be dismissed. *See Kerry*, 576 U.S. at 90.

Lastly, Plaintiff's reliance on *Cruz v. Sullivan* is misguided. (ECF No. 18, p. 15). That case considered the timeliness of an appeal filed pursuant to the denial of disability benefits. *Cruz v. Sullivan*, 802 F. Supp. 1015 (S.D.N.Y. 1992). Although the court in *Sullivan* recognized that "fundamental fairness in administrative proceedings is a prerequisite for judicial recognition of its results[,]" the court ultimately declined to consider the appropriateness of the untimeliness finding because the issue was premature at that stage in the litigation. *Id.* at 1017. This Court does not understand *Cruz* to provide Plaintiff with any grounds to avoid the fact that she has not asserted a liberty interest protected by the Constitution of the United States.

### IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is GRANTED without prejudice as to Plaintiff's claim for unreasonable delay and GRANTED with prejudice as to Plaintiff's due process claim and CARRP-related claim .[11] A separate order follows.

Date: <u>October 31, 2022</u>                            /s/
                                                    J. Mark Coulson
                                                    United States Magistrate Judge

---

[11] "Generally, the plaintiff should be afforded an opportunity to amend, or dismissal should be without prejudice." *Glover v. Loan Sci., LLC*, No. 8:19-cv-01880-PWG, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (other citation omitted); *see Palakuru v. Renaud*, 521 F. Supp. 3d 46, 54 n.9 (D.D.C. 2021) (dismissing without prejudice because the delay in adjudication may continue past a reasonable amount of time), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021).